[Crim. No. 19159. First Dist., Div. Four. Feb. 26, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
CLIFFORD LAMAR JACKSON, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Eric S. Multhaup, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CHRISTIAN, J.—Clifford Lamar Jackson appeals from a judgment of imprisonment which was rendered after a jury found him guilty of two counts of forcible rape (Pen. Code, § 261, subd. 3) and two counts of forcible oral copulation (Pen. Code, § 288a). Two victims were involved on occasions two days apart.

Appellant contends that the trial court should have dismissed the charges connected with one of the victims because investigative officials failed to preserve semen specimens taken from the victim at a hospital after the rape. Comparison of genetic markers found in the semen specimen with those in an innocent man's blood might have afforded an innocent individual a high probability of scientific exculpation. Appel-

lant had moved for production of the semen specimens but the district attorney advised the court that the evidence no longer existed.

Appellant contends that *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], and *People* v. *Nation* (1980) 26 Cal.3d 169 [161 Cal.Rptr. 299, 604 P.2d 1051], require dismissal of the charges. In *Hitch*, the Supreme Court held that an investigative agency involved in administration of a chemical test of a driver's breath for alcoholic intoxication has a duty to preserve and disclose specimens taken in administering the test. The prosecution bears the burden of demonstrating that the governmental agency had established, enforced and attempted in good faith to adhere to rigorous and systematic procedures designed to preserve the specimens. If the prosecution fails to meet this burden, the results of the test must be excluded from evidence but due process does not require dismissal of the action. (*Id.*, at pp. 652-653.) The court noted, however, that bad faith destruction of the evidence raises an inference that the evidence could demonstrate innocence rather than merely serve to impeach the test results. "In such an instance dismissal may well be the proper sanction." (*Id.*, at p. 653, fn. 7.) In *People* v. *Nation, supra,* 26 Cal.3d 169, 177, the Supreme Court declared that "when a woman has been the victim of an attempted or actual rape and the police recover a semen sample of the assailant, the authorities must take reasonable measures to adequately preserve this evidence."

Included in the record in the present case is a property receipt signed by a police officer, indicating that "vaginal cotton swabs" in police custody had been stored at the medical laboratory at Fort Ord. The specimens were lost, and there was no showing that reasonable measures had been taken to preserve the evidence. The question is thus presented whether loss of the evidence compels reversal of the judgment. The Supreme Court did not consider that question in *Nation*, because there the prosecution had delivered the specimen to the defense in response to discovery and there was no showing that deterioration of the specimen was caused by the state's inaction. We therefore return to *Hitch* for guidance as to the effect to be given to the apparent failure of the police to preserve the specimen. ■ According to *Hitch* the ordinary remedy is the exclusion of test results; it is said that dismissal "may well be the proper sanction" where there has been bad faith on the part of the prosecution (12 Cal.3d at p. 653, fn. 7). Here no test results were offered in evidence, and there is no indication that the

prosecuting authorities were guilty of bad faith. Therefore, dismissal of the action would not be justified. (See *People* v. *Sargent* (1978) 86 Cal. App.3d 148, 153 [150 Cal.Rptr. 113].)

The trial court denied a defense motion to sever the two sets of charges. Penal Code section 954 provides that where an accusatory pleading charges two or more different offenses of the same class of crimes or offenses the trial court, "in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately...." In denying the motion for severance, the trial court stated: "I don't know of any authority that stands for the proposition that you can sever the same class of crimes based upon the fact they are not similar...so, without authority I am aware of, the motion has to be denied." It thus appears that when the court denied the motion for severance it was acting under an erroneous belief that it had no authority to grant the motion.

In *People* v. *Rist* (1976) 16 Cal.3d 211, 223 [127 Cal.Rptr. 457, 545 P.2d 833], the court held that the trial court's denial of the defendant's motion for exclusion of evidence of prior convictions was not only an abuse of discretion but was not a true exercise of discretion at all. The court stated that it could not determine the degree of prejudice suffered by the defendant as a result of the court's error because the defendant might have testified had his motion been granted, and the court could not presume to know what his testimony might have been. "It is thus not possible for us to determine on the record before us the degree of prejudice suffered by defendant because of the court's error in failing to grant his motion, and the usual tests for concluding that an error requires the reversal of a judgment of conviction are not applicable." (*Ibid.*) In the present case, however, no such obstacles hinder a determination as to whether the trial court's error was prejudicial.

Appellant contends that the nondiscretionary denial of severance was prejudicial because it permitted the prosecution to use evidence of one rape to prove lack of consent in the other and to use evidence of the second rape to prove the identity of appellant as the perpetrator of the first. But if the charges had been severed, in each trial the evidence of the uncharged offenses would have been admissible as relevant to prove a fact other than a disposition to commit such acts. (See, e.g., *People* v. *Beamon* (1973) 8 Cal.3d 625, 632 [105 Cal.Rptr. 681, 504 P.2d 905]; Evid. Code, § 1101.)

■    Where a primary issue of fact is the identity of the defendant as the perpetrator of the crime, as in one of the sets of offenses in the present case, evidence of uncharged offenses is ordinarily admissible if it discloses a distinctive modus operandi common to both the charged and uncharged offenses. The modus operandi gives rise to a reasonable inference that both the offenses were committed by the same person if the marks common to those offenses set them apart from other offenses of the same general variety. (*People* v. *Matson* (1974) 13 Cal.3d 35, 40 [117 Cal.Rptr. 664, 528 P.2d 752]; *People* v. *Haston* (1968) 69 Cal.2d 233, 245-246 [70 Cal.Rptr. 419, 444 P.2d 91].)

Common marks accompanied the two sets of offenses. In each case the assailant grabbed the victim's head or neck in his arm, dragged her some distance, slapped her repeatedly, threatened to kill her, ordered her to "suck my dick" or "suck my cock," and subsequently forced sexual intercourse. While the modus operandi so far described may be shared by a number of other cases of sexual assault, there is an additional feature of the two sets of offenses whose distinctive nature tends to differentiate these offenses from other sexual assaults. In each case the assailant attempted to be friendly to his victim after he had raped her, lingering to make conversation with the victim and expressing concern for her wellbeing ("Take care of yourself, Sue" and "If anybody fucks around with you, come to me. My name is Clifford") and then simply walking away from the victim. A single distinctive common mark considered in combination with other common but undistinctive marks may invest the evidence of uncharged crimes with probative value sufficient to outweigh its prejudicial effect. (See *People* v. *Haston, supra*, 69 Cal.2d at pp. 247-250.) The combination of distinctive and undistinctive common marks in the present case was sufficient to give rise to a reasonable inference that the charged and uncharged offenses were committed by the same person.

■    As to the other set of offenses, where the defense claimed consent, evidence of a prior sex offense involving a victim other than the prosecuting witness was admissible to corroborate the prosecutrix' testimony where the prior offense was not remote in time, was similar to the charged offense, and was committed upon a person similar to the prosecuting witness. (*People* v. *Thomas* (1978) 20 Cal.3d 457, 465, 468-470 [143 Cal.Rptr. 215, 573 P.2d 433].) All those elements were present in the present case.

If the two sets of charges had been severed, in each trial the evidence of the uncharged offenses would have been admissible. The court's misapprehension in denying the motion for severance thus did not prejudice appellant. (See *People* v. *Matson, supra,* 13 Cal.3d at p. 40.)

The judgment is affirmed.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied March 19, 1980, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1980.