[L.A. No. 31817. July 16, 1984.]

BARRY GLENN WILLIAMS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Bernard Gross, Dennis A. Fischer and Fischer & Hill for Petitioner.

No appearance for Respondent.

Robert H. Philibosian, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**BROUSSARD, J.**—Petitioner is charged with five serious felony offenses, including two murder counts which carry special circumstances allegations. The charges stem from two separate and apparently gang-related incidents which occurred more than nine months apart. Respondent court denied petitioner's motion to sever one count of murder, alleged to have taken place in March 1982, from the remaining counts, which charge a murder, two attempted murders, and conspiracy relating to a shooting incident that occurred in June 1981. Petitioner now seeks a writ of mandate which would require separate trials for the two murder counts on grounds that a single

consolidated trial would unfairly prejudice his defense. We will conclude that his severance motion should have been granted.

## I.

One evening in June 1981, four persons were standing near a gymnasium at Green Meadow Park in Los Angeles when a burst of gunfire rang out. Two of the persons were wounded and another was killed by buckshot fired from a shotgun. Eyewitness testimony at a subsequent preliminary examination indicated that at least three assailants had been involved in the shootings and that multiple weapons were used. Several witnesses placed petitioner Williams in the group of assailants and saw him run from the scene along with others. However, there was no direct evidence that petitioner fired a weapon.

According to witnesses, there are two rival gangs—the "Green Meadow Park Boys" and the "89 Family Blood"—which frequent the area and have engaged in several shoot-outs. Petitioner is known to be a member of the 89 Family Blood gang, and two other persons placed at the scene are also known to be members of the "Bloods." The victims of the shootings were not known to be members of any gang but were friends with some of the Green Meadow Park Boys. Witnesses also testified that the murder victim did not know petitioner.

Nine months later, in March 1982, an eyewitness observed someone she later identified as petitioner driving a van containing at least two other occupants. The van stopped and backed up very rapidly, causing the vehicle in which the witness was riding to brake sharply. Looking into the driver's side window of the van, the witness saw the occupants laughing and heard one say, "Let's go back and fuck him up."

The van pulled up alongside a boy standing on the curb. The witness then saw an arm come out of the window on the driver's side holding an object that looked like a handgun. The boy on the curb began shaking his head and saying, "No, no, no." Shortly thereafter he was shot and killed. The eyewitness was not certain whether petitioner had been the one holding the gun, although the killer was wearing a garment with dark colored sleeves and the witness had noticed that the driver was wearing a dark colored jacket. Another eyewitness testified that he was not sure who had done the shooting but that he believed it was the driver.

Different weapons were used in the June 1981 and March 1982 homicides. There is no evidence that the victim of the latter shooting was a member of or associated with any gang; however, the boy was standing in the "terri-

tory" of the Grape Street gang when he was shot and was wearing a blue jacket, the color associated with the Grape Street gang. That gang is known to be a rival of the 89 Family Bloods. In addition, the People asserted by way of an offer of proof in their opposition to the motion to sever that they had a witness who could testify that petitioner had told him that he was being hassled in county jail about the murder by members of the Grape Street gang.

The procedural history of the case is somewhat intricate. Petitioner Williams was originally charged with only the June 1981 murder and attempted murders. He was arrested on these charges in April 1982, but moved successfully to dismiss the information pursuant to Penal Code section 995, based upon insufficiency of the evidence presented at the preliminary hearing. On the very same day, the People filed a new complaint. This latter complaint charged the March 1982 murder in addition to the June 1981 shootings and also added special circumstances allegations to each murder count, alleging multiple murder. Following a preliminary hearing on the consolidated charges, petitioner again filed a motion to dismiss the charges stemming from the June 1981 incident. This time the motion was unsuccessful.[1]

Following the denial of his motion to dismiss, petitioner moved to sever the various counts relating to the June 1981 shootings from the March 1982 murder charge, arguing inter alia that trial on the consolidated charges would unfairly prejudice his defense.[2] In denying the motion to sever, the trial court relied almost exclusively on the case of *People* v. *Rhoden* (1972) 6 Cal.3d 519 [99 Cal.Rptr. 751, 492 P.2d 1143], observing that this court in *Rhoden* had characterized the defendant's motion to sever counts of an information as "frivolous," and suggesting that petitioner's argument was similarly "not well taken."

## II.

Section 954 of the Penal Code sets forth the requirements for joinder of criminal charges. It provides in pertinent part: "An accusatory pleading

---

[1]On the same date that the second motion to dismiss was denied, the People successfully amended their complaint to add a conspiracy count. It should also be noted that the same judge who granted the first motion to dismiss under Penal Code section 995 denied the second such motion.

[2]In his original argument in support of the motion to sever, petitioner also contended that he was being penalized for the success of his first section 995 motion to dismiss by now having to face the additional murder charge as well as the special circumstances allegations. Petitioner did not present substantial evidence in support of this claim and does not pursue this contention in the instant appeal, where he focuses exclusively on the issue of unfair prejudice.

may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts . . . . [P]rovided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately.''

Petitioner, recognizing the well-settled case authority on this issue,[3] readily acknowledges that the initial requirements for joinder under section 954 have been satisfied in this case, conceding that the two counts of murder are "offenses of the same class" and that the four offenses alleged to have been committed on June 16, 1981, were "connected together in their commission," as prescribed by the statute. He therefore directs what is essentially a due process argument toward the second prong of section 954.

Since the statutory requirements for joinder were clearly met in this case, petitioner can predicate error only on clear showing of prejudice. (*People* v. *Poon, supra,* 125 Cal.App.3d 55; *People* v. *Kemp* (1961) 55 Cal.2d 458, 477 [11 Cal.Rptr. 361, 359 P.2d 913]; *People* v. *Meneley, supra,* 29 Cal.App.3d at p. 52.) If clearly established by defendant, prejudice may require severance, even though joinder is statutorily permissible under section 954. As was noted in *Coleman* v. *Superior Court* (1981) 116 Cal.App.3d 129, 135 [172 Cal.Rptr. 86], certiorari denied 451 U.S. 988 [68 L.Ed.2d 846, 101 S.Ct. 2325], "[t]he determination that the offenses are 'joinable' under section 954 is only the first stage of analysis because section 954 explicitly gives the trial court discretion to sever offenses or counts 'in the interest of justice and for good cause shown.' 'Statutory permission to consolidate does not supply a complete answer, for section 954 gives the trial court discretionary power to order separate trials in the interests of justice. Refusal of severance may be prejudicial error if discretion is abused.' [Citing *People* v. *Blalock* (1965) 238 Cal.App.2d 209, 222 (47 Cal.Rptr. 604).]''

We have previously noted that " '[w]here the consolidation meets the test of joinder,' . . . 'the difficulty of showing prejudice from denial of severance is so great that the courts almost invariably reject the claim of abuse of discretion.' '' (*People* v. *Matson* (1974) 13 Cal.3d 35, 39 [117 Cal.Rptr. 664, 528 P.2d 752], quoting Witkin, Cal. Criminal Procedure at p. 288;

---

[3]See, e.g., *People* v. *Matson* (1974) 13 Cal.3d 35, 39 [117 Cal.Rptr. 664, 528 P.2d 752]; *People* v. *Polk* (1964) 61 Cal.2d 217, 230 [37 Cal.Rptr. 753, 390 P.2d 641]; *People* v. *Pike* (1962) 58 Cal.2d 70, 84 [22 Cal.Rptr. 664, 372 P.2d; *People* v. *Poon* (1981) 125 Cal.App.3d 55, 68 [178 Cal.Rptr. 375]; *People* v. *Meneley* (1972) 29 Cal.App.3d 41, 51 [105 Cal.Rptr. 432].

see also *People* v. *Poon, supra,* 125 Cal.App.3d 55, 69; *People* v. *Rhoden, supra,* 6 Cal.3d 519, 525.) Such language, however, overstates the issue. We clearly do not wish to imply that principles of justice will never compel severance of charges or that appellate courts should never undertake to review a trial court's exercise of discretion in denying a party's motion to sever. Put simply, the joinder laws must never be used to deny a criminal defendant's fundamental right to due process and a fair trial.

The initial step in any review of a motion to sever is to examine the issue of cross-admissibility of evidence. Since cross-admissibility would ordinarily dispel any possibility of prejudice (see, e.g., *People* v. *Matson, supra,* 13 Cal.3d 35, 39-41; *People* v. *Poon, supra,* 125 Cal.App.3d 55, 70-74; *People* v. *Jackson* (1980) 102 Cal.App.3d 620 [162 Cal.Rptr. 754]), we must inquire, had the severance motion been granted, would the evidence pertinent to one case have been admissible in the other under the rules of evidence which limit the use of character evidence or prior similar acts to prove conduct (Evid. Code, § 1101, subds. (a) and (b)).[4]

■ As we noted in *People* v. *Thompson* (1980) 27 Cal.3d 303, 316 [165 Cal.Rptr. 289, 611 P.2d 883], "Evidence Code section 1101, subdivision (a) expressly prohibits the use of an uncharged offense if the only theory of relevance is that the accused has a propensity (or disposition) to commit the crime charged and that this propensity is circumstantial proof that the accused behaved accordingly on the occasion of the charged offense. [Citations.] [¶] Subdivision (a) does not permit a court to balance the probative value of the evidence against its prejudicial effect. The inference of a criminal disposition may not be used to establish any link in the chain of logic connecting the uncharged offense with a material fact. If no theory of relevance can be established without this pitfall, the evidence of the uncharged offense is simply inadmissible."[5]

---

[4] Section 1101 provides in pertinent part: "(a) . . . [E]vidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion.

"(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts."

[5] In *Thompson,* we explained the rationale behind this rule thusly: "The primary reasoning that underlies this basic rule of exclusion is not the unreasonable nature of the forbidden chain of reasoning. (See *People* v. *Schader, supra,* 71 Cal.2d at p. 772.) Rather, it is the insubstantial nature of the inference as compared to the "grave danger of prejudice" to an accused when evidence of an uncharged offense is given to a jury. (See Jefferson, *op. cit. supra.,* § 21.3, p. 262; *People* v. *Sam, supra,* 71 Cal.2d at p. 203 [77 Cal.Rptr. 804, 454 P.2d 700].) As Wigmore notes, admission of this evidence produces an 'over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts.' (1 Wigmore, Evidence, § 194, p. 650.) It breeds a 'tendency to condemn,

■ It is also well established, however, that evidence of "other crimes" or prior acts of misconduct may be admissible provided that it has relevance to the issues of the intent or identity of the accused. (*People* v. *Thompson, supra,* 27 Cal.3d 303, 314; *People* v. *Thomas* (1978) 20 Cal.3d 457, 465 [143 Cal.Rptr. 215, 573 P.2d 433]; *People* v. *Poon, supra,* 125 Cal.App.3d 55, 71.) Thus, for example, evidence of a common design or plan, which might be highly probative of the identity of the perpetrator or of his intent to commit the offense, may very well meet relevancy standards. (*People* v. *Thomas, supra,* 20 Cal.3d 457, 465.)[6]

In the present case, one of the crucial issues facing the jury will be the identity of the perpetrator(s) of the two killings and the related crimes. If the trials were to be severed, it is likely that the prosecution would try to introduce evidence relating to one of the shootings at the trial involving the other incident, on the grounds that such evidence would be probative of the identity of the killer. This is the only theory upon which such "other crimes" evidence might be admissible in the instant case,[7] and it would almost certainly fail to meet the requisite standards for admission.

not because he is believed guilty of the present charge, but because he has escaped unpunished from other offenses . . . .' (*Ibid.*) Moreover, 'the jury might be unable to identify with a defendant of offensive character, and hence tend to disbelieve the evidence in his favor.' (Note (1964) 78 Harv.L.Rev. 426, 436.) 'We have thus reached the conclusion that the risk of convicting the innocent . . . is sufficiently imminent for us to forego the slight marginal gain in punishing the guilty.' (*People* v. *Schader; supra,* 71 Cal.2d at pp. 772-773.)" (*Thompson, supra,* 27 Cal.3d at p. 317, fns. omitted.)

[6]In discussing the issue of relevancy in *Thompson, supra,* we also noted Evidence Code section 352, which provides an additional discretionary safeguard against the admission of evidence which may be more prejudicial than probative. Section 352 provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

As petitioner has correctly pointed out, nothing contained in article I, section 28 of the California Constitution, adopted at the June 8, 1982, election by initiative measure denominated Proposition 8, and particularly subdivision (d) thereof which implements the right to "Truth in Evidence" by providing that relevant evidence shall not be excluded in a criminal proceeding (with exceptions not here applicable), may be deemed to have altered the principles articulated in *Thompson, supra,* et al. in any manner that would affect the trial of the instant case. In fact, Proposition 8 specifically upheld the continuing viability of Evidence Code section 352.

Furthermore, Proposition 8 cannot even be applied to the trial of this case because the offenses were committed prior to the adoption of that new provision, and we recently held that Proposition 8 will not be applied retroactively. (*People* v. *Smith* (1983) 34 Cal.3d 251, 257-263 [193 Cal.Rptr. 692, 667 P.2d 149].)

[7]If the trials of the two shooting incidents were severed, and the prosecution was able to obtain a murder conviction in the first case tried, the prosecution would then have the opportunity to seek the death penalty against defendant in his second trial under Penal Code section 190.2, subdivision (a)(2). (See discussion below.) If such were indeed the case, and the prosecution was subsequently able to obtain a murder conviction in the second trial as well, specific evidence pertaining to the shooting incident in the first trial would be admissible at the *penalty* phase of the second trial as evidence of factors in aggravation. However, this observation is irrelevant to our present analysis of cross-admissibility under Evidence Code section 1101.

■ In *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267], certiorari denied 410 U.S. 924 [43 L.Ed.2d 393, 955 S.Ct. 1118], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, footnote 12 [160 Cal.Rptr. 84, 603 P.2d 1], we set forth the proper analysis to be employed in situations where the prosecution seeks to introduce evidence of uncharged offenses in order to prove the identity of the perpetrator of the charged crime: "[O]nly common marks having some degree of distinctiveness tend to raise an inference of identity and thereby invest other-crimes evidence with probative value. The strength of the inference in any case depends upon two factors: (1) the *degree of distinctiveness* of individual shared marks, and (2) the *number* of minimally distinctive shared marks." (*People* v. *Thornton, supra,* at p. 756.)

Applying this analysis to the case at bar, it is readily apparent that evidence of each shooting incident would not be admissible to prove identity in the respective trial of the other under Evidence Code section 1101, subdivision (b), since the two incidents do not bear the requisite similarity to each other. The two shootings certainly do not possess " 'a sufficiently high degree of common features . . . where they warrant the inference that if the defendant committed the other acts he committed the act charged.' " (*People* v. *Thomas, supra,* 20 Cal.3d at p. 465, quoting *People* v. *Cramer* (1967) 67 Cal.2d 126, 129 [60 Cal.Rptr. 230, 429 P.2d 582].) Indeed, there is very little similarity between the two incidents except for the inference that they both may have been gang-related. The circumstances of the incidents differ in virtually every regard—the location, the time of day, the number of people involved, and the method of attack. In addition, there is no evidence that the same weapon was used in the fatal assaults, and it certainly could not be fairly claimed that the two episodes reveal a common design or plan.

The People themselves have indicated no factors, besides the alleged relation to gang activity, which would cause the evidence of the two crimes to cross the distinctiveness threshold which we have outlined. In fact, the one factor they suggest—evidence of common gang membership—might very well mitigate *against* admissibility of one offense in the trial of the other, since it is arguably of limited probative value while creating a significant danger of unnecessary prejudice.[8]

---

[8]Recently, a plurality of this court held in *People* v. *Cardenas* (1982) 31 Cal.3d 897 [184 Cal.Rptr. 165, 647 P.2d 569] that the trial court had abused its discretion by permitting the prosecution to introduce evidence of "common gang membership," because proof of such affiliation had "limited probative value, but its admission created a substantial danger of undue prejudice." (*Ibid.,* at pp. 904-905.) It has also been recently stated that "evidence of gang membership is not per se inadmissible but to be admissible it must meet the test of relevancy." (*People* v. *Perez* (1981) 114 Cal.App.3d 470, 477 [170 Cal.Rptr. 619].) The current case, however, is not a suitable vehicle for further discussion of the proper standards for admissibility of evidence relating to gang membership, nor do we determine whether evidence of defendant's gang affiliation will be admissible at a forthcoming trial.

The issue of the cross-admissibility of the two separate incidents represents only the first stage of our inquiry into the propriety of defendant's severance motion. Having concluded that evidence of each incident would not be admissible in the separate trial of the other, it does not necessarily follow that the trial court was compelled to sever the two murder counts.[9] ■ As was noted in *People* v. *Matson, supra,* 13 Cal.3d 35, and more recently in *Coleman* v. *Superior Court, supra,* " '[t]he judge's discretion in refusing severance is broader than his discretion in admitting evidence of uncharged offenses . . . . In both cases the probative value of considering one alleged offense in light of another must be weighed against the prejudicial effect, but additional factors favor joinder. "Joinder of unrelated charges . . . ordinarily avoids needless harassment of the defendant and the waste of public funds which may result if the same general facts were to be tried in two or more separate trials." ' [Citations.] Under *Matson,* a ruling on a motion to sever is based on a weighing of the probative value as against the prejudicial effect, but in the weighing process the beneficial results from joinder are added to the probative-value side. This requires the defendant to make an even stronger showing of prejudicial effect than would be required in determining whether to admit other-crimes evidence in a severed trial." (*Coleman* v. *Superior Court, supra,* 116 Cal.App.3d at p. 138-139; see also *People* v. *Poon, supra,* at p. 73.)

In the case at bar, the two additional factors favoring joinder suggested by this court in *Matson* provide little or no additional support for a decision to deny severance. The first of these factors—"the needless harassment of the defendant," which has previously been noted in cases like *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 825-827 [48 Cal.Rptr. 366, 409 P.2d 206]—is totally irrelevant since it is the defendant who has moved for separate trials, thereby waiving this concern. The second factor noted in *Matson* is "the waste of public funds which may result if the same general facts were to be tried in two or more separate trials" (citing *People* v. *Brock* (1967) 66 Cal.2d 645, 655 [58 Cal.Rptr. 321, 426 P.2d 889], disapproved on other grounds in *People* v. *Cook* (1983) 33 Cal.3d 400, 413, fn. 13 [189 Cal.Rptr. 159, 658 P.2d 86]). In *Brock,* the same factual issues relating to the defendant's arrest and the search of his room would have been litigated at both trials. Here, on the other hand, there would be virtually no duplication of evidence in a severed trial because the offenses are not connected together in their commission. Although there is inevitably some duplication in cases where the same defendant is involved, it would be error to permit this concern to override more important and fundamental issues of justice. ■ Quite simply, the pursuit of judicial economy and efficiency may never

---

[9]Thus, contrary to the assertion in the dissenting opinion, we do not hold that absence of cross-admissibility necessarily proves prejudice.

be used to deny a defendant his right to a fair trial. (*In re Anthony T.* (1980) 112 Cal.App.3d 92, 102 [169 Cal.Rptr. 120].)

We turn then to the question of prejudice and more specifically to whether the trial court should have exercised its discretion and granted the motion to sever "in the interests of justice and for good cause shown." It should be clear by now that a demonstration of substantial prejudice by a defendant may be sufficient to warrant severance of charges which could otherwise properly be joined. When substantial prejudice is clearly shown, a trial court's denial of a defendant's motion for severance constitutes an abuse of discretion under Penal Code section 954. Fundamental principles of due process compel such a conclusion.

 We wish to stress, however, that a determination of prejudice is a highly individualized exercise, necessarily dependent upon the particular circumstances of each individual case. In analyzing this issue in the instant matter, we find the most useful mode for analysis to be that set out in *Coleman* v. *Superior Court, supra,* 116 Cal.App.3d 129, 137-140. There, the defendant was charged with various sexual crimes against two minor children as well as with the rape and murder of an adult victim. The charges had been joined for purposes of trial, and the trial court refused to grant defendant's severance motion. The Court of Appeal reversed, holding that the denial of the motion to sever was an abuse of discretion because (1) the evidence of the crimes against the children did not share sufficient common distinctive marks with the crimes against the adult and therefore would not have been admitted in the trial of the crimes against the adult, (2) sexual crimes against children are highly inflammatory and might have a very serious prejudicial effect on the jury in the trial of the crimes against the adult, (3) the joinder of the charges involving the adult, the evidence of which was relatively weak, with the charges involving the children, the evidence of which was strong, would have a prejudicial effect, and (4) if convicted of the crimes against the adult, the defendant would be subject to the death penalty.

It is true that the present case does not involve the "highly inflammatory" issue of sex crimes against children. Yet it would be folly to suggest that we should limit the consideration of the prejudicial impact of a joint trial to cases which involve sexual assaults against minors. Examining the facts of the two separate incidents here, we find that all four of the factors established in the above model are also present in the current matter, albeit in somewhat different form.

First, as we have noted above, the two shootings do not share sufficient common and distinctive marks to be admissible in the respective separate

trials. Second, the evidence of gang membership—the sole distinctive factor allegedly common to each incident—might indeed have a very prejudicial, if not inflammatory effect on the jury in a joint trial. The implication that gangs were involved and the allegation that petitioner is a gang member might very well lead a jury to cumulate the evidence and conclude that petitioner must have participated in some way in the murders or, alternatively, that involvement in one shooting necessarily implies involvement in the other. Further, although it is apparent that more than one assailant was involved in both killings, only petitioner will be standing trial in front of the jury. The absence of other known suspected participants coupled with the evidence of two seemingly senseless, gang-related shootings could indeed produce "an 'over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts.' (1 Wigmore, Evidence, § 194, p. 650.)" (*People* v. *Thompson, supra,* 27 Cal.3d at p. 317.) In addition, as petitioner suggests, it might be the highly publicized phenomenon of gang warfare in Southern California which would be on trial as much as the defendant, thereby raising the spectre of prejudice far beyond the facts of the actual case.

Third, whether we choose to view this case as involving the joinder of one weak and one strong case or alternatively of two relatively weak cases,[10] joinder would still remain very prejudicial to defendant under the facts of this case. In *Coleman, supra,* 116 Cal.App.3d 129, the court was concerned with the potentially prejudicial effect of joining a weak case, the murder, with the charges of sexual attacks against minors, for which the evidence was much stronger. The court feared that the jury would be unable to decide one case exclusively on the evidence relating to that crime, noting that it would be difficult for jurors to maintain doubts about the weaker case when presented with stronger evidence as to the other. (*Coleman, supra,* 116 Cal.App.3d at p. 138.)

This reasoning should not be limited to situations where the relative strengths of the cases are unequal. Indeed, our principal concern lies in the danger that the jury here would aggregate all of the evidence, though presented separately in relation to each charge, and convict on both charges in a joint trial; whereas, at least arguably, in separate trials, there might not be convictions on both charges. Joinder in this case will make it difficult not to view the evidence cumulatively. The result might very well be that

---

[10]For example, one might reasonably believe that the evidence pertaining to the March 1982 shooting (the van incident) appears to make a conviction on that count a strong probability, at least on a theory of aiding and abetting. Others obviously may differ in their assessment of the relative strengths of the two cases, but under either approach the danger of prejudice remains manifest.

the two cases would become, in the jurors' minds, one case which would be considerably stronger than either viewed separately.

The final consideration in our analysis is that since one of the charged crimes is a capital offense, carrying the gravest possible consequences, the court must analyze the severance issue with a higher degree of scrutiny and care than is normally applied in a noncapital case. Even greater scrutiny is required in the instant matter, for it is the joinder *itself* which gives rise to the special circumstances allegation of multiple murder under Penal Code section 190.2, subdivision (a)(3).[11] If the cases are severed, then under section 190.2, subdivision (a)(2), the possibility of the death penalty arises *only if* there is a conviction for murder in the first case to be tried.[12] It is therefore of the utmost importance that we consider the cases both separately and together in order to fairly assess whether joinder would tend to produce a conviction when one might not be obtainable on the evidence at separate trials. Clearly, joinder should never be a vehicle for bolstering either one or two weak cases against one defendant, particularly where conviction in both will give rise to a possible death sentence. For the reasons outlined above, we conclude that in the interests of justice and for good cause shown, defendant's motion to sever should have been granted.

Let a peremptory writ of mandate issue, directing the trial court to set aside its order denying defendant's motion to sever and to enter an order granting said motion.

Bird, C. J., Mosk, J., Kaus, J., Reynoso, J., and Grodin, J., concurred.

**GOLDSTEIN, J.***—I respectfully dissent. We are here confronted with a petition for extraordinary relief from an alleged abuse of discretion on the part of the trial court which considered and denied petitioner's motion for severance under section 954 of the Penal Code. Because there is no substantial prejudice to petitioner resulting from the denial of his motion for severance, I would find no abuse of discretion and deny the writ.

Petitioner concedes, as he must,[1] that the June 16, 1981, murder count and the March 25, 1982, murder count are "offenses of the same class"

---

[11]Penal Code section 190.2, subdivision (a)(3) provides: "The defendant has in this proceeding been convicted of more than one offense of murder in the first or second degree." Petitioner would only face an allegation of multiple murder special circumstances if the charges were indeed joined for purposes of trial.

[12]Penal Code section 190.2, subdivision (a)(2) provides: "The defendant was previously convicted of murder in the first or second degree."

*Assigned by the Chairperson of the Judicial Council.

[1]See, footnote 3, majority opinion, *ante,* page 447.

and that the other offenses alleged to have been committed on June 16, 1981, were "connected together in their commission," and, thus, all the offenses are properly joined under section 954. As to one another, each of the offenses is a *charged* offense.

Statutory permission to join did not prevent petitioner from moving the trial court for severance because section 954 gives that court discretion to order separate trials in the interest of justice. (*People* v. *Blalock* (1965) 238 Cal.App.2d 209, 222 [47 Cal.Rptr. 604].) Such a motion is an appeal to the sound discretion of the trial court. (*People* v. *Duane* (1942) 21 Cal.2d 71, 78 [130 P.2d 123]; *People* v. *Isby* (1947) 30 Cal.2d 879, 897 [186 P.2d 405].) Refusal to sever may be error if discretion is abused. (*People* v. *Blalock, supra,* at p. 222.) "If established, prejudice may require severance, even though joinder of the offenses is permissible under section 954. . . . Prejudice is not assumed, however, but must be clearly established by the party seeking severance." (*People* v. *Poon* (1981) 125 Cal.App.3d 55, 69 [178 Cal.Rptr. 375].) "Because a severance motion lies within the discretion of the trial judge, denial of the motion will be disturbed on appeal only for abuse of discretion resulting in substantial prejudice to the defendant [citation omitted]." (*People* v. *Matson* (1974) 13 Cal.3d 35, 39 [117 Cal.Rptr. 664, 528 P.2d 752].) However, in the face of prejudice amounting to an abuse of discretion, appellate courts have not hesitated to correct the abuse. (See, *Coleman* v. *Superior Court* (1981) 116 Cal.App.3d 129, 139 [172 Cal.Rptr. 86].)

Put simply, in the absence of a constitutional infirmity, section 954 does not, and cannot, deny a criminal defendant any fundamental right to due process or a fair trial; no constitutional infirmity is raised by petitioner. The reason is clear. Under section 954, the trial court is vested with discretion to act in the interest of justice and for good cause shown. We are asked merely to review a trial court's exercise of that discretion. If substantial prejudice to defendant resulted from the exercise of discretion, abuse, not unconstitutionality, is the consequence. If such abuse exists, a writ will right the wrong.

The majority opinion states, "[t]he initial step in any review of a motion to sever is to examine the issue of cross-admissibility of evidence." (Majority opn., *ante,* p. 448.) The test of cross-admissibility is erroneous both in logic and law.

Until the *Coleman* court was enticed into stating that nonadmissibility was one of the four bases for its conclusion that the trial court had abused its discretion by denying a motion to sever, cross-admissibility had never been used as a test to show prejudice when all the offenses were *charged.* (*Cole-*

*man* v. *Superior Court, supra,* (1981) 116 Cal.App.3d 129, 136, 139; cf., *People* v. *Blalock, supra,* 223 [charged offenses, cross-admissibility used to suggest absence of prejudice]; *People* v. *Haston* (1968) 69 Cal.2d 233 [70 Cal.Rptr. 419, 444 P.2d 91] [uncharged offenses probative value outweighed prejudice]; *People* v. *Matson, supra,* 13 Cal.3d 35, 39-41 [charged offenses, cross-admissibility used to show absence of prejudice]; *People* v. *Poon, supra,* 125 Cal.App.3d 55, 70-74 [charged offenses, cross-admissibility used to show absence of prejudice].)

The *Coleman* court correctly decided the question of joinder under section 954 (*Coleman* v. *Superior Court, supra,* 116 Cal.App.3d 129, 134-135). However, when that reviewing court turned to the question of whether the trial court abused its discretion in denying the motion to sever, it cited *People* v. *Jackson* (1980) 102 Cal.App.3d 620 [162 Cal.Rptr. 574], as an example of cross-admissibility evidencing lack of prejudice. In *Coleman,* the People had embraced *Jackson,* which prompted the Court of Appeal to point out the superior court erred in concluding cross-admissibility was present in the case pending before it. Then, applying cases dealing with *uncharged* other offenses (*People* v. *Thompson* (1980) 27 Cal.3d 303 [165 Cal.Rptr. 289, 611 P.2d 883], *People* v. *Haston, supra,* 69 Cal.2d 233, *People* v. *Thornton* (1974) 11 Cal.3d 738 [114 Cal.Rptr. 467, 523 P.2d 267]), which it should not have done as they are inapplicable, (*People* v. *Shells* (1971) 4 Cal.3d 626, 631-632 [94 Cal.Rptr. 275, 483 P.2d 1227]), *Coleman* gratuitously undermined the sound differences between the line of cases which deal with the application of Evidence Code section 1101 and the question of *uncharged* other offenses (*People* v. *Haston, supra*) and the cases involving *charged* offenses where section 1101 has no application whatsoever (*People* v. *Shells, supra*).[2]

The fact that evidence would be cross-admissible if charges were severed does prove that denying severance is without prejudice. On the other hand, it is necessary to ignore the fact that all the offenses are charged as to one another and assume precisely what is being sought, severance, before nonadmissibility can be entertained as a basis for granting a motion to sever. (*People* v. *Shells, supra,* 4 Cal.3d at pp. 631-632; *People* v. *Menely* (1972) 29 Cal.App.3d 41, 51-52 [105 Cal.Rptr. 432].)

We are not being asked to approve the joinder of separately charged offenses (uncharged as to one another) where petitioner would lose the ben-

---

[2]The combined result of the *Haston* and *Shells* cases not only satisfies one's sense of logical symmetry, but also provides sound law securely resting on the antecedents of the two cases. It is interesting to note that *Haston* and *Shells* are the product of a single mind, Justice Sullivan, and this court was also of a single mind, at least as to the issues here pertinent, the three dissenting justices in *Haston* having concurred with the majority's conclusions regarding the admissibility of other uncharged offenses.

efits of any nonadmissibility that might inure to him.[3] Obviously, prejudice would flow from such a joinder. We are dealing with properly joined charges, all charged offenses as to one another, which, under the majority's reasoning, will never withstand the test of assumed severance when the offenses charged are of the same class of crimes or offenses but not connected together in their commission. The majority has usurped the function of the Legislature by recasting section 954. In doing so, it abrogates, sub silentio, *People* v. *Shells, supra,* 4 Cal.3d 626, and substantial portions of *People* v. *Matson, supra,* 13 Cal.3d 35. The result is that the trial courts are left without a usable standard as to when a reviewing court will find an otherwise statutorily proper joinder to be intolerably prejudicial.

Contrary to the majority's approach, it would seem more correct to start with Penal Code section 954 rather than "the issue of cross-admissibility." The difference is significant. If the charges are properly joined, as is here conceded, Evidence Code section 1101 has no application. (*People* v. *Shells, supra,* 4 Cal.3d 626.) The search then is for substantial prejudice, if any there be, to test the trial court's exercise of discretion.

I adopt the following from Justice Hasting's decision below, "Legally, petitioner relies upon *Coleman* v. *Superior Court* (1981) 116 Cal.App.3d 129 [172 Cal.Rptr. 86], wherein the court found that it was error not to sever two counts of sexual assaults against children from counts charging the rape-murder of an adult. The factors cited by the court in *Coleman, supra,* were that the evidence in the rape-murder was weaker than that in the child assaults [there were no eyewitnesses to the former crime and identity was in issue], the evidence of the crimes against the children would not be admissible to prove identity as to the murder charge, joinder of the highly inflammatory sexual assaults on children, as to which there was eyewitness evidence, would have a serious prejudicial effect on the jury, and the fact that the defendant faced the death penalty, but only as to the rape-murder, exacerbated the potential for prejudice.

"Comparison of the facts before us with those present in *Coleman, supra,* demonstrates conclusively that respondent court herein did not abuse the discretion . . . . Thus the inflammatory quotient of the June 16th and March 25th incidents is virtually identical. Both involved wanton gang related shootings in public locations after dark [fn. omitted]. There is strong eyewitness evidence establishing petitioner as a participant in both incidents.

---

[3] A joinder of separately charged offenses to obtain cross-admissibility where cross-admissibility did not previously exist would result in substantial prejudice to defendant and clearly would be an abuse of discretion. This intolerable circumstance is the only true analogue to the "admissibility proves absence of prejudice" test referred to earlier and is not present in this case.

The evidence as to whether petitioner actually fired a weapon in either incident is only circumstantial.

"Gang membership may be relevant to establish motive in both incidents. We need not now decide whether evidence of gang membership will be admissible at trial; it would, in fact, be premature to do so now. We can say, however, that the relevant factors as to admissibility will be the same for both incidents . . . .

"Petitioner's situation falls well within the purview of *People* v. *Matson* (1974) 13 Cal.3d 35, 39, wherein the court, citing Witkin, California Procedure, page 288, held that where, as here, the test for joinder is met, the difficulty of showing prejudice from denial of severance is so great that the courts almost invariably reject the claim of abuse of discretion; and further pointed out: 'The judge's discretion in refusing severance is broader than his discretion in admitting evidence of uncharged offenses. The requirements of similarity that apply to the admission of evidence of *uncharged* offenses [citation omitted] are not applicable when all offenses are *charged*. (*People* v. *Shells, supra,* [94 Cal.Rptr. 275, 483 P.2d 127], italics in the original.)' *People* v. *Matson, supra,* 13 Cal.3d 35, 41.)"

There being no substantial prejudice to petitioner, I would deny the writ.