[Crim. No. 43997. Second Dist., Div. Five. Mar. 21, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL JAMES STEWART, Defendant and Appellant.

## COUNSEL

Daniel Ritkes, under appointment by the Court of Appeal, and Michael James Stewart, in pro. per., for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert F. Katz and William T. Harter, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

FEINERMAN, P. J.—Defendant, Michael James Stewart, was convicted by jury of two counts of murder (Pen. Code, § 187), with special circumstances (Pen. Code, §§ 190.2, subd. (a)(17)(i), 190.2, subd. (a)(3)), one count of robbery (Pen. Code, § 211), one count of attempted robbery (Pen. Code, §§ 664/211) and one count of assault with a deadly weapon (Pen. Code, § 245). An allegation of personal use of a firearm relating to each of the counts was found to be true (Pen. Code, §§ 12022.5, 1203.06, subd. (a)(1)), as was an allegation of firearm use by a principal, whose arming was not an element of one of the murders charged (Pen. Code, § 12022, subd. (a)). An allegation of great bodily harm was also found to be true (Pen. Code, §§ 12022.7, 1203.075). The jury acquitted defendant of one count of murder.

Defendant was sentenced to state prison for twenty-five years to life for one murder, plus two years for the firearm use allegation and to a consecutive term of fifteen years to life for the other murder, plus two years for the firearm allegation. Defendant was also given one consecutive year for the robbery, six consecutive months for the attempted robbery, one consecutive year for the assault with a deadly weapon, plus one consecutive year for the great bodily harm enhancement. He was also sentenced to an additional seven years for a separate robbery and firearm use enhancement which involved an offense not tried with the present case.

Defendant contends that the trial court erred when it denied his motions to sever certain of the counts against him and to strike the special circumstance allegations prior to the date of sentencing. Defendant also contends that the abstract of judgment misstates his sentence on one of the offenses.

### BACKGROUND

Between August 9, 1980, and August 28, 1980, defendant, while a minor, committed several felonies which resulted in a six-count information.

*Counts I-III* of the information involved the following events: In the early morning hours of August 9, 1980, Anthony Price (Price) and Calvin Johnson (Johnson) stopped their car to fix a flat tire. Johnson left to borrow a jack and Price was then approached by defendant and another man. Defendant pointed a shotgun at Price's head, and defendant's partner asked Price for his money. After Price emptied his pockets, the holdup men directed Price to unzip his boots to see if he kept additional money there. Price began to follow their instructions, but he ultimately was able to back away from the men and escape.

The men left the area and eventually caught up with Price's friend, Johnson. They attempted to rob Johnson, and he was shot in the groin. Johnson died a week later from the wound.

*Count IV* of the information stemmed from another murder. On August 18, 1980, Renee Gutierrez (Gutierrez) and Vicki Meeks (Meeks) were shot at by three unknown assailants while sitting on the porch of a friend's home. Gutierrez ran to the house next door and came out with defendant and another man, Keith Smith (Smith). After retrieving a shotgun from the closet of another friend's home, defendant gave Smith a revolver from his own pocket, and the two went in search of the men who had shot at Gutierrez and Meeks. Defendant eventually saw a stranger passing through a nearby parking lot and he and Smith pursued the man. After stopping the individual to ask what he was doing there, defendant fired his shotgun into the victim's stomach.

*Count V* of the information involved a murder of which defendant was acquitted. On August 27, 1980, David Rudnick was shot at close range while in his car. He died of gunshot wounds to the shoulder and head. Three young men, possibly including defendant, were seen running from the scene.

*Count VI* of the information stemmed from an attempted murder charge, which the jury later reduced to assault with a deadly weapon. In the early morning hours of August 28, 1980, defendant and his friend, Gutierrez, joined in a crap game outside a liquor store. At the end of the game, Gutierrez and the victim, Larry Fields (Fields), began to fight over possession of $2. Defendant pulled out a pistol, positioned himself across the hood of a nearby car, and shot at Fields, who was wounded in the stomach and leg.

Shortly after the trial commenced, the defendant moved to strike the special circumstance allegations. At that time, the law was unsettled as to

whether such allegations could be charged against a minor.[1] After the jury's verdict, but before sentencing, the Supreme Court made a definitive ruling in this regard in *People* v. *Spears* (1983) 33 Cal.3d 279 [188 Cal.Rptr. 454, 655 P.2d 1289]. The Supreme Court held that, in keeping with previous case law (*People* v. *Davis* (1981) 29 Cal.3d 814, 832 [176 Cal.Rptr. 521, 633 P.2d 186]), minors who committed murder could not be charged with special circumstances and sentenced to life in prison without possibility of parole. (*People* v. *Spears, supra,* 33 Cal.3d at p. 283.) In light of *Spears,* the trial court disregarded the jurors' findings on the multiple-murder special circumstance allegations in sentencing the defendant.[2]

## DISCUSSION

## I

Defendant agrees that the charges set forth in counts I through III of the information were properly joined for trial because they grew out of a continuing sequence of crimes which occurred on the same date. ██ He contends, however, that each of the remaining three counts should have been tried separately from any other of the charges because they were not linked to one another in time or modus operandi. Defendant argues that while joinder of counts is permissible under Penal Code section 954, that consolidation of offenses in the instant case denied defendant his fundamental right to due process and to a fair trial. We disagree. As we shall indicate below, this case differs both procedurally and factually from the Supreme Court decision in *Williams* v. *Superior Court* (1984) 36 Cal.3d 441 [204 Cal.Rptr. 700, 683 P.2d 699], the holding upon which defendant's arguments principally depend.

Penal Code section 954 provides that "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and

---

[1] At the start of trial, the Supreme Court had not yet held that the death penalty law, as amended by the initiative adopted at the 1978 General Election, did not authorize courts to sentence juveniles to life in prison without possibility of parole. The trial court noted that the Supreme Court had granted hearings in two cases involving this issue. Since the murder charges underlying the special circumstance allegations had been consolidated and were being heard by the jurors in one trial, the trial court foresaw no prejudice to defendant in the inclusion of the special circumstance allegations. However, the court reserved defendant's right to make a motion to strike the special circumstance allegations at the end of the trial, pending a definitive ruling by the Supreme Court.

[2] The probation report recommended a sentence of life in prison without possibility of parole. At the time of the probation and sentencing hearing, the trial court stated that the decision rendered in *Spears* mandated a maximum sentence of 25 years to life.

if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." However, "in the interests of justice and for good cause shown," a court may "order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups" which are tried separately.

Defendant acknowledges that under the statute, joinder of the murder charges in counts I, IV and V are clearly permissible because they are crimes of the same class.[3] He argues, however, that statutory permission to consolidate offenses does not relieve the court of its responsibility to order separate trials when required in the interests of justice and for good cause shown. (*Williams* v. *Superior Court, supra,* 36 Cal.3d 441, 447.)

At the outset, we note that when the statutory requirements for joinder are met, error can only be predicated on a clear showing of prejudice. (*People* v. *Poon* (1981) 125 Cal.App.3d 55, 69 [178 Cal.Rptr. 375].) Moreover, a determination of such prejudice "is a highly individualized exercise, necessarily dependent upon the particular circumstances of each individual case." (*Williams* v. *Superior Court, supra,* 36 Cal.3d at p. 452.) We find the facts of this case to differ significantly from those of the case upon which defendant primarily relies. (*Williams* v. *Superior Court, supra,* 36 Cal.3d 441.)

In *Williams* v. *Superior Court, supra,* 36 Cal.3d 441 (hereinafter cited as *Williams*), a case emanating by way of a petition for writ of mandate filed *prior to the commencement of trial,* the court held that if prejudice is clearly established by a defendant, severance may be required, even though joinder is statutorily permissible under Penal Code section 954. There, defendant was charged with five felonies, which included two murder counts with special circumstance allegations. The charges stemmed from two separate and evidently gang-related incidents which happened more than nine months apart.[4] After examining the facts involving the two separate shooting incidents, the court held that defendant's motion to sever should have been granted in the interests of justice and for good cause shown.[5]

---

[3]Moreover, in the instant case the crimes were connected in their commission in proximity of time and place. (*People* v. *Matson* (1974) 13 Cal.3d 35, 39 [117 Cal.Rptr. 664, 528 P.2d 752].) All of the offenses occurred within a 19-day period and in the same neighborhood around Avalon Gardens.

[4]The lower court denied defendant's motion to sever one count of murder which took place in March 1982 from the remaining counts, which charged a murder, two attempted murders and conspiracy relating to a shooting incident which occurred in June 1981.

[5]The Supreme Court issued a writ directing the trial court to set aside its order denying defendant's motion to sever and to enter an order granting such motion.

The Supreme Court grounded its ruling on a fourfold set of findings:[6] First, the two shootings did not share sufficient common and distinctive marks with one another so as to cause the evidence of one crime to be admitted in a separate trial on charges involving the other. Second, evidence of gang membership, the sole distinctive factor allegedly common to each incident, might have had a very prejudicial, if not inflammatory, effect on the jury in a joint trial. Third, whether viewed as one weak and one strong case or alternatively as two relatively weak cases, joinder was prejudicial to defendant, since a danger existed that the jury would aggregate all the evidence, though presented separately in relation to each offense, and convict on both charges in a joint trial. Fourth, since one of the charged crimes involved a capital offense, a higher degree of scrutiny and care was required. (*Williams,* 36 Cal.3d at pp. 452-454.) We have reviewed each of these factors in relation to the case at bar and conclude that defendant was not prejudiced.

First, although defendant argues that there was very little "cross-admissibility" of evidence among the various charges in the present case,[7] this is not dispositive. As the court in *Williams* noted, even if the evidence of each incident would not be admissible in the separate trial of the other, "it does not necessarily follow that the trial court was compelled to sever the . . . murder counts." (*Williams,* at p. 451.)

Second, unlike *Williams,* in this case there is no highly prejudicial connection between the crimes, like that of gang membership, from which the jurors could imply that if defendant committed one crime, he must have committed the others. To the contrary, the record reflects that the jurors zealously adhered to the trial court's instruction that each of the counts charged represented a distinct offense and that each count must be decided separately. (CALJIC No. 17.02.) Thus, the jurors not only acquitted defendant of one of the murders (count V) and found a special allegation of attempted robbery against another murder victim to be not true, but they also found defendant guilty of the two lesser included offenses of second degree murder (count IV) and assault with a deadly weapon (count VI) on

---

[6]The Supreme Court based its fourfold mode of analysis primarily on the argument for severance developed in *Coleman* v. *Superior Court* (1981) 116 Cal.App.3d 129, 139-140 [172 Cal.Rptr. 86].

[7]The first murder charged (count I) was in furtherance of a robbery, but the second murder charged (count IV) came in response to an assault with guns against defendant's friends. The motive behind the third murder (count V) was unclear, as was the identity of the assailants. A shotgun was used in the first two murders but not in the third. There was also no one witness available who could implicate defendant in all of the offenses charged, although some witnesses were available to link defendant to more than one of the crimes involved. Defendant maintains that taken as a whole, the evidentiary value of each crime to the other was weak.

two other counts.[8] The principal concern in *Williams* that the jury would aggregate all the evidence, presented separately in relation to each charge, and convict defendant on all the charges in a consolidated trial, simply did not materialize here. (See *Williams,* 36 Cal.3d at p. 453.) The record in the case at bench indicates that the jurors were capable of distinguishing between and among the felonies charged, despite the fact that it appears that the People, in closing argument, attempted to encourage jurors to interlink some of the offenses charged.[9] The jury clearly resisted any tendency to believe the defendant guilty of one or another charge merely because he was "a likely person to do such acts." (*Williams,* at p. 453.)

Third, joinder was not used as a vehicle to bolster one or more weak counts against defendant. On each of the counts of which defendant was found guilty, ample evidence existed to support the jury's verdict. The victims themselves identified defendant as the perpetrator of the crimes involving robbery (count III) and attempted murder (count VI). Regarding the attempted robbery (count II) and one of the murder charges (count I), an eyewitness saw defendant approach the victim with a shotgun and heard defendant's accomplice ask the victim for his money. As to another murder charge (count IV), different witnesses testified that they saw defendant arm

---

[8]The information charged defendant with first degree murder in count IV and with attempted murder in count VI.

[9]Defendant complains that the prosecutor's closing argument mixed the evidence of the different charges and encouraged jurors to consider evidence of all the charges together. His primary complaint seems to be with respect to count VI, which charged defendant with the attempted murder of Fields. The prosecutor's remarks about that shooting included the following:

(1) "It wasn't for lack of trying on the part of the defendant that Larry Fields is still alive, because he sure did his darndest [*sic*] to make sure [he] joined [other alleged murder victims] in the promised land, because he didn't fire once at Larry. He didn't fire twice at him. He fired three times at him. And he used a fairly large-sized gun to do it . . . ." "He got shot basically in the same place that [two of the murder victims] got shot, in the stomach area."

(2) "Is that so surprising considering what happened in counts I, II, and III, and in count V, that this was another shooting committed during the course of a robbery?"

(3) "What was the defendant attempting to do on the night he shot Larry Fields? He was attempting to kill Larry Fields just as he killed the first individual . . . just as he killed [the other murder victims]. Any one of these statements alone may or may not . . . convince you beyond a reasonable doubt that the defendant is guilty. All this evidence taken together has got to convince you that the defendant committed this crime also, and that it's not an assault with a deadly weapon, because he had the intent to kill, and he had expressed malice . . . . [W]hat went on . . . is almost a carbon copy of what went on in the [earlier] robberies . . . ."

(4) "Considering the fate of the defendant's other robbery victims, do you have any doubt that he intended to kill Larry Fields when he started capping off the rounds at him. He had three shots fired at Larry Fields at very close range."

We note that despite these arguably inappropriate remarks, the jurors relied on their own understanding of the evidence and refused to find defendant guilty of the attempted murder of Larry Fields. They found him guilty of the lesser included offense of assault with a deadly weapon.

himself with a shotgun before chasing down the victim in a parking lot. Under a grant of immunity, an eyewitness testified that he saw defendant shoot the unarmed man in the stomach.

There was strong and compelling evidence that defendant was the perpetrator of the crimes of which he was convicted. In the one murder charge where identity was in question (count V) because defendant was only one of three young men seen running from the victim's car, the defendant was acquitted. Given the strength of the testimony against defendant as to each of the other charges, it is manifest, beyond a reasonable doubt, that defendant would have been found guilty of the same offenses whether or not the counts had been severed.

Fourth, unlike the circumstances in *Williams,* defendant was not subject to capital punishment. We are therefore not required to analyze the severance issue with the higher degree of scrutiny and care which is merited in a capital case. (*Williams,* 36 Cal.3d at p. 454.)

Having conducted the fourfold analysis suggested by the court in *Williams,* we conclude that defendant was not denied his right to a fair trial. (*Williams,* at pp. 451-452.) In *Williams,* a pretrial proceeding, the court acted prophylactically to preclude any possibility of prejudice by issuing a writ to order the lower court to grant defendant's motion for severance. Here, the record clearly shows that defendant was not prejudiced by denial of his severance motion. As the court in *Williams* stresses, a determination of whether the interests of justice require severance is a case-by-case decision, and absent a clear showing of prejudice, a trial court's denial of a defendant's motion of severance does not constitute an abuse of discretion under Penal Code section 954.

■ Finally, we find meritless defendant's contention that the counts charging defendant with assault or robbery should not have been joined with the other crimes because they were not connected in their class or commission with the other felonies charged. Clearly, the attempted murder charge, count VI, (later found to be assault with a deadly weapon by the jury) was of the same violent class of crimes as the murder charges. Likewise, case law holds that robberies may be regarded as in the same class as other assaultive crimes against the person which may be jointly charged against an accused under Penal Code section 954. (See, e.g., *People* v. *Rhoden* (1972) 6 Cal.3d 519, 524-525 [99 Cal.Rptr. 751, 492 P.2d 1143].) Moreover, defendant acknowledges that the robbery and attempted robbery charges in counts II and III were properly joined with the murder charge in count I as having grown out of a continuing and intertwined sequence of criminal activity.

Defendant further contends that the trial court's failure to sever some of the counts against him was exacerbated by the People's inclusion of multiple-murder special circumstances allegations in the information. (Pen. Code, § 190.2, subd. (a)(3).) He argues that as a minor at the time of the offenses, he should not have been made subject to such allegations and that their incorporation at trial magnified the appearance of his cumulative guilt for each and all of the crimes committed. In the light of *People* v. *Spears, supra,* 33 Cal.3d 279, which came down after the trial started, it was error to include the special circumstance allegations, but we do not find it to be prejudicial error, given the circumstances in this case.

■ This is not a case where defendant appeals from the judgment after imposition of a life sentence (see, *People* v. *Powers* (1984) 151 Cal.App.3d 905, 913 [199 Cal.Rptr. 142]), nor is it a case where some evidence would have been excluded but for the special circumstance allegations. As discussed above, the evidence to support each guilty verdict was more than sufficient and the jury carefully examined each substantive crime on its own merits—reducing some charges to lesser included offenses and acquitting defendant on others. Moreover, the trial court recognized it was bound by the *Spears* decision at the time of sentencing and disregarded the jury's findings on the special circumstance allegations in sentencing the defendant. Accordingly, we find no prejudicial error.

## II

The trial court sentenced defendant to a term of one year for assault with a deadly weapon (count VI), with an additional one-year great bodily harm enhancement. However, the abstract of judgment incorrectly records a sentence of three years for the assault, with an additional three years for the enhancement.

We modify the judgment to provide that as to count VI, the defendant is sentenced to a consecutive term of one year for assault with a deadly weapon, plus one year for the great bodily harm enhancement. In all other respects, the judgment is affirmed.

Ashby, J., and Eagleson, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 16, 1985.