[No. E002685. Fourth Dist., Div. Two. July 15, 1986.]

STEVEN MARTIN VERZI, Petitioner, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Gary Scherotter for Petitioner.

Grover C. Trask II, District Attorney, Thomas N. Douglass, Jr., Assistant District Attorney, and Joseph A. Daily, Deputy District Attorney, for Respondent and for Real Party in Interest.

**OPINION**

**RICKLES, Acting P. J.**—On November 18, 1981, the district attorney filed an information against Steven Martin Verzi, petitioner. He was charged in counts I, II, and III with the rape of Cynthia C. (Pen. Code, § 261, subd. (2)),[1] the rape of Norma S. (§ 261, subd. (2)), and the burglary of their residence (§ 459) on February 27, 1981. He was charged in counts IV, V, and VI with the rape of Elaine C. (§ 261, subd. (2)), forcible oral copulation (§ 288a, subd. (c)), and the burglary of her residence (§ 459) on September 6, 1981. Petitioner's motion to sever counts I, II, and III from counts IV, V, and VI for the purpose of trial was denied. This court denied a petition for writ of mandate challenging the denial of the motion to sever. The Supreme Court granted a petition for review and directed this court to issue an alternative writ.

FACTS

A preliminary hearing was held on November 5, 1981, at which Cynthia C. and her mother Norma S. testified. They revealed Norma was visiting her daughter Cynthia in Palm Springs on February 27, 1981. They were confronted at approximately 2 a.m. by an intruder in their residence, who

---

[1]Unless otherwise indicated, all section references in this opinion are to the Penal Code.

raped them. They described the assailant as a bearded white male, possibly of Latin descent. He was 22-28 years old, 150-170 pounds, 5 feet 10 inches– 5 feet 11 inches, and had a well-defined medium build, brown hair, and brown eyes.[2] The assailant carried a gun which made a clicking sound.

Following the incident, officers prepared a facsimile drawing of the assailant. Cynthia told officers her assailant had been at the Nest Bar earlier in the evening and had indicated he had watched her for a long time.

Wally Hahn, a bar patron, was identified by the bartender as resembling the drawing. Hahn had been in the bar on the evening of the incident. Later Cynthia told officers she believed she may have seen her assailant at College of the Desert. John Carratello was tentatively identified. Finally, Cynthia thought a picture of Mark Alcott looked like the assailant.

Elaine C. testified at the November 5, 1981, preliminary hearing. She indicated on September 6, 1981, an intruder had entered her residence at 2 a.m. The assailant had broken and entered through a bathroom window. He located Elaine on a living room couch, and held a gun to her head. The gun made a metallic clicking sound. He raped her and forced her to orally copulate him. Elaine recognized her assailant's voice and appearance.

Officers arrived at petitioner's residence at 3:19 a.m. on September 6, and arrested him shortly thereafter. The engine of his car was warm. Officers found an air pistol, resembling a Colt .45, in his car.

Petitioner's booking photograph was used in follow-up investigation of the February rape of Cynthia and Norma. A composite photograph of six individual facial photographs was prepared. Petitioner was identified by Norma, Cynthia and Elaine from the composite photograph and later at the preliminary hearing. Cynthia and Elaine identified petitioner at a "voice" line-up. After the preliminary hearing, defendant failed to appear for trial. He remained a fugitive until May 1985 when he was arrested in Dallas, Texas, and returned for trial.

## DISCUSSION

█ Petitioner initially contends the return to alternative writ and answer to petition served upon petitioner contains no verification and should be stricken. Not so. Under Code of Civil Procedure section 446, public agencies and their officers are exempt from such a requirement.

---

[2]On September 6, 1981, the date of defendant's booking, he was found to stand 6 feet 2 inches and weigh 175 pounds.

Petitioner tacitly concedes the crimes here were all of the same class and properly joined as a matter of pleading under section 954. ■ The statute also provides the trial court has express discretion to sever the counts for the purpose of trial "in the interests of justice and for good cause shown, . . ." (§ 954.) Petitioner may attack the trial court's denial of his motion to sever as an abuse of discretion only on a clear showing of prejudice. He claims he has made the requisite showing relying on *Williams* v. *Superior Court* (1984) 36 Cal.3d 441 [204 Cal.Rptr. 700, 683 P.2d 699].

■ The *Williams* court utilized a two-step approach in examining severance motions: "The initial step in any review of a motion to sever is to examine the issue of cross-admissibility of evidence. Since cross-admissibility would ordinarily dispel any possibility of prejudice [citations], we must inquire, had the severance motion been granted, would the evidence pertinent to one case have been admissible in the other under the rules of evidence which limit the use of character evidence or prior similar acts to prove conduct (Evid. Code, § 1101, subds. (a) and (b)).[3]" (*Williams* v. *Superior Court, supra,* at p. 448.)

■ In the present case, one of the issues facing the jury will be the identity of Norma's and Cynthia's assailant. Petitioner notes Elaine's identification is stronger "based upon her prior contact with petitioner." Petitioner contends there are insufficient common marks to allow cross-admissibility. ■ In *People* v. *Thornton* (1974) 11 Cal.3d 738, 756 [114 Cal.Rptr. 467, 523 P.2d 267], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, footnote 12 [114 Cal.Rptr. 467, 523 P.2d 267], the Supreme Court established an analysis to be employed in situations where the prosecution seeks to introduce evidence of uncharged offenses in order to prove the identity of the perpetrator of the charged crime: "'[O]nly common marks having some degree of distinctiveness tend to raise an inference of identity and thereby invest other-crimes evidence with probative value. The strength of the inference in any case depends upon two factors: (1) the *degree of distinctiveness* of individual shared marks, and (2) the *number* of minimally distinctive shared marks.'" (Original italics.) (*Williams* v. *Superior Court, supra,* at p. 450, quoting *People* v. *Thornton, supra,* at p. 756.)

---

"[3][Evidence Code] Section 1101 provides in pertinent part:

"'(a) . . . [E]vidence of a person's character or a trait of his character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his conduct) is inadmissible when offered to prove his conduct on a specified occasion.

"'(b) Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident) other than his disposition to commit such acts.'"

The People set forth 12 items which logically show the same person was the perpetrator of both crimes.

1. All crime scenes were residences in Palm Springs.

2. All crimes occurred between 2 and 3 a.m.

3. All victims indicated the assailant's gun made a clicking noise.[4]

4. The assailant in both rapes had a beard.

5. After intercourse, the assailant remained with victims and talked to them.

6. The assailant in each case had alcohol on his breath.

7. The "target" victims were in their 20's and had similar hair color and appearance.[5]

8. The assailant knew the "target" beforehand.

9. Intercourse lasted a short time. The assailant ejaculated.

10. All victims' vaginas were fondled.

11. The assailant in each case had problems obtaining an erection and the victims were required to "help."

12. The assailant in each case was very gentle during the act of intercourse.

Petitioner sets forth seven differences in the two incidents[6] which he argues would prevent cross-admissibility. Petitioner's focus is incorrect.

---

[4] A gun matching the victims' descriptions was found in defendant's car.

[5] Apparently the assailant did not expect Cynthia's mother to be present. The assailant had commented "What is she doing there" and "I thought you were alone."

[6]

| "Cynthia/Norma | Elaine |
| --- | --- |
| "(a) Entry through unlocked door | Entry by breaking bathroom window |
| "(b) Assailant wore no jewelry | Assailant wore gold necklace to middle of . . . chest with pendant |
| "(c) Victim took off own clothing | Assailant removed victim's clothing |
| "(d) Assailant was dressed | Assailant was naked |
| "(e) Gun held in left hand, placed on night stand | Gun held in right hand |
| "(f) Beard under neck, moderate length | Beard on chin only, freshly trimmed |
| "(g) | Said name was 'Richard' Forced oral copulation" |

*Thornton,* as well as petitioner's own authority, makes clear, the court must find a sufficient number of distinctive common marks. Clearly a sufficient number has been established in the present case. The differences cited do not contradict the shared distinctive marks revealed by the People and pale in comparison. We conclude the two incidents are cross-admissible and severance is not required under *Williams.*

"[E]ven if the evidence of each incident would not be admissible in the separate trial of the other, 'it does not necessarily follow that the trial court was compelled'" to grant the motion to sever. (*People* v. *Stewart* (1985) 165 Cal.App.3d 1050, 1056 [212 Cal.Rptr. 90], quoting *Williams* v. *Superior Court, supra,* at p. 451.) ""'[T]he judge's discretion in refusing severance is broader than his discretion in admitting evidence of uncharged offenses. . . .'" ▮ [A] ruling on a motion to sever is based on a weighing of the probative value as against the prejudicial effect, but in the weighing process the beneficial results from joinder are added to the probative-value side.[7] This requires the defendant to make an even stronger showing of prejudicial effect than would be required in determining whether to admit other-crimes evidence in a severed trial. [Citations.]" (*Williams* v. *Superior Court, supra,* at p. 451; see also *People* v. *Balderas* (1985) 41 Cal.3d 144, 173 [222 Cal.Rptr. 184, 711 P.2d 480].)

*Williams* and *Balderas* focused on three additional factors which bear on severance. ▮ Refusal to sever might be an abuse of discretion where (1) certain charges are unusually likely to inflame the jury against the defendant; (2) a "weak" case is joined with a "strong" case, thus a "spillover" effect of aggregate evidence on several charges might well alter the outcome of either or both cases; and (3) one of the charges carries the death penalty. (*People* v. *Balderas, supra,* at p. 173.) None of these concerns is present.

▮ First, the rapes (as well as the burglaries and oral copulation) in the present case are not highly inflammatory or offensive. As suggested in *Newman* v. *Superior Court* (1986) 179 Cal.App.3d 377, 383-384 [224 Cal.Rptr. 530], "[w]hile rape is an offense as to which the public has properly shown great concern, the trial court could well say as did the Supreme Court of the crimes in *Balderas*: 'By the sad standards of the 1970's and 1980's, they were not particularly brutal, repulsive, or sensational.'"[8]

Second, petitioner asserts the Cynthia C. and Norma S. case is "weak" vis-à-vis the Elaine C. case. He bases this contention on Cynthia's suggesting

---

[7]In addition to the inherent benefits of a joint trial, the People indicated at oral argument at least seven witnesses would be common to both incidents.

[8]We do not intend to imply rape under aggravated circumstances could not be highly inflammatory or offensive.

other individuals resembled her assailant, while Elaine recognized (from prior interaction) her assailant. We view the cases as similar in strength. Cynthia identified petitioner at a "voice" line-up. Both she and Norma visually identified him at the preliminary hearing and from a composite police photo. Both identified the weapon seized from petitioner. And both gave rational, unimpeached accounts of the incident at the preliminary hearing. Further, Cynthia recognized the assailant, after viewing a police photo, as a man who had come to her home on two separate occasions to use her phone.

"On a motion to sever, the trial court may assume that the jury will be correctly instructed (*People* v. *Balderas* (1985) 41 Cal.3d 144, 175 . . .), and that the prosecutor's arguments will be monitored by the defense to prevent improper argument (compare *People* v. *Stewart* (1985) 165 Cal.App.3d 1050, 1057 . . .). Considering the fact . . . the cases are not factually complicated and . . . there is no duplication of evidence to confuse the jury, the danger that the jury will aggregate the evidence is minimized." (*Newman* v. *Superior Court, supra,* at p. 383.)

Third, rape is not a capital offense.

Petitioner has failed to demonstrate the trial court abused its discretion or that he would suffer any actual or substantial prejudice by a joint trial. "Determination of a severance issue is 'a highly individualized exercise, necessarily dependent upon the particular circumstances of each individual case.' [Citation.]" (*People* v. *Balderas, supra,* at p. 173.) Here, the circumstances do not indicate the claimed, but unproven, fears of prejudice will materialize. We are disinclined to breathe life into the phantom conjured up by petitioner. There was no abuse of discretion in denying the motion to sever.

### DISPOSITION

The petition for writ of mandamus is denied and the alternative writ is discharged.

Kaufman, J., and McDaniel, J., concurred.