[No. B008228. Second Dist., Div. Five. Aug. 30, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
VICTORIANO MAYORGA, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Parts II and III are not published as they do not meet the standards for publication contained in California Rules of Court, rule 976(b).

932

COUNSELCOUNSEL

Michael R. Totaro, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert R. Anderson and Robert C. Schneider, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**RUBIN (L. D.), J.**\*—On this appeal we examine the propriety of raising for the first time on a motion for new trial the claim that a defendant's rights under *People* v. *Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361] have been violated. Because under the facts of this case, defendant was not excused from raising the issue pretrial or during trial, we conclude his motion for a new trial on that ground did not timely raise the issue and the motion was properly denied. For this reason, and because defendant's other arguments on appeal are also unmeritorious, we affirm.

---

\*Assigned by the Chairperson of the Judicial Council.

## Procedural History

Victoriano Mayorga (defendant) was charged with several counts of rape and kidnaping, all involving the same victim and all taking place in the early morning hours of May 7, 1983. Defendant was arrested that day but was released a few days later. Defendant was subsequently rearrested and, following a preliminary hearing, an information was filed on September 3, 1983.

On March 14, 1984, defendant's first trial resulted in a mistrial, the court finding the jury to be deadlocked. Defendant was retried before a different trial judge. At the second trial the jury found the defendant guilty of all charges. Following the denial of a motion for new trial, the court sentenced defendant to state prison.

## Facts

On March 6, 1983, Lisa M., then 16 years old, was at the home of her friend Little Man. At about midnight or 1 a.m., she left to visit another friend. Finding no one home at her friend's house, she walked back to Little Man's house to ask him for a ride home. When she arrived at Little Man's house he was not there.

Lisa had been waiting around Little Man's house for 15 or 20 minutes, when Little Man's brother, Reynaldo M., and two other men, including defendant, arrived in a car driven by defendant. Lisa told Reynaldo she was waiting for Little Man. Reynaldo checked the house for his brother, and, finding no one there, asked Lisa if she wanted to go look for Little Man. They got into the car, and the four drove around a number of places, parked and drank beer. Defendant then drove Reynaldo and Lisa back to Little Man's house. Reynaldo got out, and, as Lisa was leaving the car, the passenger grabbed Lisa around the neck so she could not get out of the car, and defendant drove off. While in the car, defendant told Lisa he would shoot her. Defendant eventually stopped the car at a deserted factory area. Defendant got into the back seat and raped Lisa. When he was finished, the passenger also raped Lisa. Defendant then reentered the back seat of the car and raped her again.

The three then drove to a motel in Maywood, but there were no rooms available, so they drove to a motel in Bell Gardens. The motel registry showed they checked in at 4:40 a.m. At the motel defendant once again threatened Lisa, but apparently no further sexual activity took place. The three later left the motel and drove to Long Beach where the passenger worked.

On the return trip to Bell Gardens, at approximately 6 or 7 a.m., defendant and Lisa were involved in a car accident on the Santa Ana Freeway. Thereafter, defendant stopped at a liquor store and then a market in Bell Gardens. While in the market, defendant left Lisa who then told a woman employee of the market that she had been raped. The woman called the police. As the police and Lisa were walking toward where defendant's car had been parked, Lisa saw defendant and identified him.

Lisa was taken to Downey Community Hospital and at 11:40 that morning (March 7th) was examined. Vaginal samples were taken as part of the examination, and a standard "rape kit" was prepared. Hospital personnel gave the rape kit to the investigating officer. On the face of a large envelope containing the samples were the following instructions: "Refrigerate, if possible, and transport to criminalistics laboratory without delay." Although aware of these instructions, the officer failed to follow them; instead, he booked the rape kit into evidence, placing it in an unrefrigerated locker. The rape kit containing the vaginal specimen was sent to the sheriff's lab on or about April 8, 1983, approximately one month after the incident. Sheriff's criminalist Thomas McCleary examined the kit on May 2, 1983.

On direct examination McCleary testified that sperm was present in the vaginal specimen which he had tested. On cross-examination, defense counsel inquired into the means by which blood typing of semen samples can be medically accomplished. Even though McCleary testified that his "experience in that area is limited," defense counsel examined him at length on the subject of semen blood typing.

According to McCleary, unless the police department specifically asks for it, blood typing is not regularly conducted. He also testified on the two methods of semen blood-typing. The PGM test is more specific than the second type which merely identifies the blood-type by the A, B, or O method. PGM material degrades very quickly while in the vagina. It is not likely that a PGM test would be successful if more than six hours had elapsed between intercourse and retrieval of the semen sample from the vagina. (The hospital examination here was conducted some eight to ten hours after the rape.) Only 10 percent of all PGM tests produce results. The ABO test might be successful even if the semen had been retrieved 15 to 16 hours after intercourse. The longer a sample is left unrefrigerated the greater the likelihood that it will degrade so as to preclude accurate typing under either method.

McCleary also testified that, even if the sample had been typed, the result could not have conclusively excluded defendant as a participant in the rape. This was due to the fact that, if Lisa had had intercourse with more than

one individual, an expert would not be able to determine whether the sample obtained by the hospital personnel contained all the semen in her vagina. Accordingly, typing of the semen obtained from her, even if it did not match defendant's blood type, would not have necessarily ruled out his participation.

The defense did not call its own expert witness on the subject of blood typing of semen samples, and there was no evidence that the defense ever attempted to type the semen.[1]

## CONTENTIONS

Defendant's contentions on appeal are as follows: (1) The trial court erred in not granting defendant's motion for a new trial because of the police's failure to preserve properly samples from the rape kit; (2) defendant's motion for mistrial for prosecutorial misconduct should have been granted; and (3) defendant could not lawfully be sentenced for both the kidnaping and the rapes since all of the charges arose out of a single course of conduct with a single objective.

## I

### DEFENDANT'S MOTION FOR NEW TRIAL BASED ON *HITCH* VIOLATION WAS PROPERLY DENIED.

■ Defendant's principal argument on appeal is that the trial court erred in refusing to grant a new trial as a result of the Bell Gardens Police Department's failure to preserve adequately the semen samples from the rape kit. Hospital personnel prepared the rape kit as part of their examination of Lisa on March 7, 1984, and gave the kit to the investigating officer that morning. Even though the rape kit had directions stating that it was to be refrigerated, the officer failed to do so, placing the kit instead in an unrefrigerated evidence locker. Defendant contends that the police action prevented the semen from being medically typed, and that typing might have exculpated defendant. It is this failure to preserve the semen to allow for further testing by the defense that defendant claims violates *Hitch*.

In *People* v. *Hitch, supra,* 12 Cal.3d 641, the Supreme Court established rules governing the intentional but nonmalicious destruction of evidence by law enforcement authorities. ■ It held that, where there is a reasonable possibility the destroyed evidence would be favorable to the defense, the

---

[1]The defense *argued* to the trial court that typing was unsuccessfully attempted in December of 1983, but there was no *evidence* of any typing.

trial court must impose appropriate sanctions against the prosecution unless the law enforcement agency has established rigorous and systematic procedures to preserve the evidence. (*Id.,* at pp. 649, 652-653.)

This principle has been applied to the preservation of semen samples in several appellate cases following *Hitch.* ■ In *People* v. *Nation* (1980) 26 Cal.3d 169, 177 [161 Cal.Rptr. 299, 604 P.2d 1051], the Supreme Court held that not only does law enforcement have the duty to retain a semen sample that it has gathered, it must also take measures to preserve the sample so as to afford the defense an opportunity to conduct its own laboratory analysis. "[W]hen a woman has been the victim of an attempted or actual rape and the police recover a semen sample of the assailant, the authorities must take reasonable measures to adequately preserve this evidence." (*Ibid.;* see also *People* v. *Newsome* (1982) 136 Cal.App.3d 992, 1001 [186 Cal.Rptr. 676]; *People* v. *Jackson* (1980) 102 Cal.App.3d 620, 623 [162 Cal.Rptr. 574].)

The People do not question the applicability of the foregoing principles to the present case. Their principal argument on appeal is that the *Hitch* issue was not properly raised below because it was asserted for the first time at a motion for new trial.[2] In order to determine whether this tardy assertion of the *Hitch* issue is fatal to defendant's appeal, we must examine the nature and purpose both of a *Hitch* motion and of a motion for new trial.

A. *Hitch Motion*

In ruling on a *Hitch* motion, the trial court performs a number of functions. He makes factual findings, applies the findings to the standard of materiality and to the requirement that police establish adequate safeguards, and, if a *Hitch* violation has occurred, the court must fashion an appropriate sanction. ■ Because of the multitude of functions required, whether a *Hitch* violation exists is a mixed question of law and fact. (*People* v. *Newsome, supra,* 136 Cal.App.3d at p. 1003.)

---

[2]By way of an oblique reference to a portion of the reporter's transcript on appeal, defendant states that a *Hitch* motion was made prior to the new trial motion. That reference was not to a written or oral motion, nor to a minute order on any *Hitch* motion; rather it is to a passing statement by the *prosecutor* that a *Hitch* motion was made. The clerk's transcript on appeal contains no such motion, nor does our review of the superior court file reveal any. Either the prosecutor was in error or, at most, the motion was made in conjunction with defendant's first trial. Defendant does not assert on appeal that any *Hitch* motion was improperly denied during or prior to the first trial; he claims as error the failure to grant a new trial following the second trial. Nothing in the record indicates that defendant raised the *Hitch* issue during the second trial or in pretrial proceedings attendant thereto. Thus we treat the record as if defendant had not made a *Hitch* motion prior to his motion for new trial.

By way of further elaboration, on a *Hitch* motion, the trial court has significant fact finding responsibilities—it must determine the credibility of witnesses, resolve conflicts in the evidence, weigh the evidence and draw factual inferences. For example, there may be a question as to whether law enforcement officers actually had possession of the evidence, was it destroyed, is other evidence available that would equally assist the defense, what steps had the police undertaken to safeguard evidence of this nature, what alternative methods were available. The trial court's findings will not be disturbed on appeal if supported by substantial evidence. (See *People* v. *Goss* (1980) 109 Cal.App.3d 443, 454 [167 Cal.Rptr. 224].)

After finding the facts, the court must apply them to the legal standards established by *Hitch.* "This latter issue is a question of law with respect to which the appellate court has the ' "ultimate responsibility . . . to measure the facts, as found by the trier, against the [appropriate legal standard]." ' " (*People* v. *Newsome, supra,* 136 Cal.App.3d at p. 1003, original brackets.)

Finally, if *Hitch* error is found, the trial court is given "a large measure of discretion" in determining the exact sanctions to impose against the prosecution. (*People* v. *Zamora* (1980) 28 Cal.3d 88, 99 [167 Cal.Rptr. 573, 615 P.2d 1361] (plur. opn.); *People* v. *Bailes* (1982) 129 Cal.App.3d 265, 272-273 [180 Cal.Rptr. 792].) Not every destruction of evidence requires a dismissal of charges. (*People* v. *Zamora, supra,* 28 Cal.3d at p. 99; *People* v. *Hitch, supra,* 12 Cal.3d at p. 653.) Rather, " '[t]he remedies to be applied need be only those required to assure the defendant a fair trial.' " (*People* v. *Zamora, supra,* 28 Cal.3d at p. 99.) A review of the appellate opinions on the subject discloses the strong tendency of courts to fashion sanctions less drastic than dismissal. (See Cal. Criminal Law Practice Series (Cont.Ed.Bar 1985 Supp.) Discovery, § 16.) The proper remedy for destruction of a semen sample would ordinarily be suppression of the sample, not dismissal. (See *People* v. *Jackson, supra,* 102 Cal.App.3d at pp. 623-624.)

■ Procedurally, there are three methods by which a *Hitch* issue properly can be brought before a trial court and therefore, preserved on appeal.[3] The first and most common method is by motion made prior to trial. This is, in fact, the procedure utilized by the defendant in *Hitch* itself. (*People* v. *Hitch, supra,* 12 Cal.3d at p. 645; see also *People* v. *Newsome, supra,*

---

[3]A defendant's failure to raise *Hitch* in the trial court bars the issue from being raised for the first time on appeal. (*People* v. *Seaton* (1983) 146 Cal.App.3d 67, 75 [194 Cal.Rptr. 33]; *People* v. *Carrasco* (1981) 118 Cal.App.3d 936, 940 [173 Cal.Rptr. 688]; *People* v. *Smith* (1977) 70 Cal.App.3d 306, 318 [138 Cal.Rptr. 783].)

136 Cal.App.3d at p. 996.[4]) Certainly, this method is preferred. It allows for a full evidentiary hearing without the time pressures and inefficiencies inherent in interrupting a jury trial; it apprises the court and prosecutor of precisely the evidence which defendant claims has been destroyed; and it affords the prosecutor the opportunity to resist the claim that the evidence is material and to demonstrate that the police had established legally sufficient safeguards. It also provides the court with the best opportunity to fashion the most appropriate sanction. In sum, it informs the parties in advance of trial of any limitations to be imposed on them during trial as a result of the *Hitch* violation, thus allowing them to plan and develop their respective cases accordingly.[5]

A second, albeit less preferred, alternative is to object to the admission of evidence at trial. (See *In re Michael L.* (1985) 39 Cal.3d 81, 86 [216 Cal.Rptr. 140, 702 P.2d 222].) Although an evidentiary hearing can be held outside the presence of a jury, such a hearing requires the interruption of the trial, with the obvious attendant inefficiencies.

The third, and significantly less favored method of raising *Hitch,* is by motion to strike testimony. While legally sufficient to preserve the issue on appeal (see *People* v. *Bailes, supra,* 129 Cal.App.3d at p. 273, fn. 2), this method is less desirable not only because of the interruption in the trial but also because the evidence has already been placed before the trier of fact. An instruction that evidence has been stricken and, therefore, to be disregarded can never be more effective than not admitting the evidence in the first place.

---

[4]*People* v. *Newsome, supra,* presents a procedural setting that should have been utilized by defendant here. As was the case below, Newsome's first trial resulted in a deadlocked jury, and a mistrial was declared. Before the second trial, defendant moved to dismiss under *Hitch* relying on testimony at the first trial concerning destruction of evidence. Here, the record of the second trial indicates that there was testimony in the first trial suggesting that additional evidence might have been available to defendant if the semen sample had been properly preserved. Yet, defendant below did not do what the *Newsome* defendant did, namely make his *Hitch* motion prior to the second trial.

[5]The prosecution's need for timely notice of a defendant's intention to assert a *Hitch* violation is aptly illustrated here. The district attorney called the criminalist for the limited purpose of establishing that semen was present. On direct examination, she asked no questions concerning blood typing of the semen sample, and her entire examination took only a few minutes. It was on cross-examination that defense counsel first elicited testimony on typing, but made no *Hitch* motion, objection or motion to strike. The prosecutor had no knowledge at that time that defendant would raise the issue posttrial. Therefore, she reasonably could have concluded that to dwell on the subject of typing would direct the jury's attention away from the critical issues of the case as she saw them. This is especially so since the criminalist testified before the victim was called as a witness. Further, to counter fully the point defendant was trying to make through her witness, the district attorney likely would have had to call another witness since the first criminalist admitted he was not an expert on typing. If the district attorney had realized there would later be an effort by defendant to impose a sanction under *Hitch* based on the trial testimony, she might have adopted a different strategy at trial.

Objections to evidence and motions to strike are also disfavored because, if a sanction is imposed in the middle of trial, the trial plans of counsel may seriously be affected, thus necessitating the calling of unanticipated witnesses and/or a continuance of the trial.

It is in part for these reasons that at least one court has held that a defense motion under *Hitch* was untimely when made after the People had rested. (*People* v. *Taylor* (1977) 67 Cal.App.3d 403, 409 [136 Cal.Rptr. 640].) The court reasoned that the most defendant could achieve by his motion was suppression of testimony by two police officers which had already been received, and then stated: "Common sense, however, dictates that once the evidence which a successful assertion of a *Hitch* issue would suppress, has been received without objection, it is too late." (*Id.*)

The foregoing establishes that only when the *Hitch* motion is properly raised before trial can the claimed violation be asserted, defended and resolved in the most efficient and reasoned manner. While it is legally sufficient to raise the issue by objection or motion to strike, these avenues are significantly less preferred.

We next examine the nature of a motion for new trial and the propriety of raising a *Hitch* violation in that manner.

B. *Motion for New Trial*

In determining whether a motion for new trial is a proper vehicle to raise a *Hitch* issue for the first time, our inquiry necessarily begins with the legal authorization for the motion.

A new trial is defined in Penal Code section 1179, which provides: "A new trial is a reexamination of the issue in the same Court, before another jury, after a verdict has been given." The granting of a new trial places the parties in the same position as if no trial had been held. (Pen. Code, § 1180.)

Penal Code section 1181 establishes nine grounds for a new trial. None of them authorizes a new trial for a *Hitch* violation.[6]

---

[6]Penal Code section 1181, subdivision 8, concerning newly discovered evidence would appear to authorize a new trial if after trial a defendant learned for the first time that certain evidence, presumed never to have been in existence, was in fact gathered by law enforcement and then destroyed. No such facts are present here. On the contrary, at trial defendant cross-examined prosecution witnesses at length on the circumstances of the deterioration of the specimen and its possible effect on further laboratory analysis.

Section 1181, subdivision 5, permits a new trial if the court erred "in the decision of any question of law arising during the course of the trial." Thus, had a *Hitch* motion been made and denied at the trial, the trial court could have reconsidered its ruling and granted a new trial. As previously noted (*ante,* fn. 2), no *Hitch* motion was made during trial, and defendant in his new trial motion neither referred to any such prior motion nor relied on section 1181, subdivision 5.

On the face of the code section, the statutory grounds for the granting of new trials are exclusive. (Pen. Code, § 1181.) Case law historically so held. (See *People* v. *Amer* (1907) 151 Cal. 303, 306 [90 P. 698]; *People* v. *Cardenas* (1981) 114 Cal.App.3d 643, 647 [170 Cal.Rptr. 763].) Hence, if new trials were limited to those enumerated in the Penal Code, defendant's motion would have to be denied for that reason alone. However, a new trial may be granted for nonstatutory reasons. ■ A review of the principal cases creating exceptions to the exclusive statutory grounds disclose a narrow principle has emerged: new trials may be ordered for nonstatutory reasons when an error has occurred resulting in the denial of defendant's right to a fair trial, *and* the defendant has had no earlier opportunity to raise the issue. Thus, in *People* v. *Fosselman* (1983) 33 Cal.3d 572 [189 Cal.Rptr. 855, 657 P.2d 1144], the court held that the trial judge should have granted a new trial when the defendant was denied effective assistance of counsel. Not only was the defendant's right to a fair trial at issue, the first opportunity to raise the question properly was after verdict. The Supreme Court concluded that the trial court, being the most familiar with the case, and not the appellate court, should rule on the issue in the first instance at a motion for new trial. (*Id.,* at pp. 582-583.)

Similarly, in *People* v. *Davis* (1973) 31 Cal.App.3d 106 [106 Cal.Rptr. 897], a new trial was granted when after the verdict defense counsel learned that a critical witness who was subpoenaed did not appear because he was in custody on one occasion and feared being arrested on another occasion during the trial.[7] The appellate court held that the defendant had been denied a fair trial and affirmed the order granting a new trial. Defendant could not have raised the issue earlier because after the trial was continued four days to secure the witness' attendance, the witness still did not appear and defense counsel had no information on his whereabouts to support any request for a further continuance. (*Id.,* at pp. 108-109; see also *People* v. *Oliver* (1975) 46 Cal.App.3d 747, 751-752 [120 Cal.Rptr. 368] [discussion of new trial on nonstatutory grounds; new trial affirmed under Pen. Code, § 1181 even though minute order did reflect statutory grounds].)

None of these cases authorizes the granting of a new trial, even where an error of constitutional dimension is involved, when the defendant had an earlier opportunity to raise the error but did not. (Compare *People* v. *Cardenas, supra,* 114 Cal.App.3d 643, 647-649 [order for new trial improper when defendant did not pursue pretrial appellate procedures after trial court granted 1538.5 motion only in part].) Moreover, there are strong reasons

---

[7]The motion for new trial in *Davis* was not premised on newly discovered evidence (Pen. Code, § 1181, subd. 8), for such ground does not embrace witnesses and matters known to the defendant at the time of trial. (*Id.,* at p. 109.)

for allowing new trial motions on nonstatutory grounds only when there has been no prior occasion to assert the error. Any other rule would emasculate the statutory grounds established in Penal Code section 1181, and would regularly mandate new trials in cases where error could have been easily corrected at trial by suppression of evidence, admonition, instruction or other appropriate devices.[8]

## C. *The Trial Court Properly Denied Defendant's Motion for a New Trial.*

■ Applying the two-prong test for a nonstatutory new trial motion, it is apparent that the trial court properly denied defendant's motion. To be sure, the intentional suppression of material evidence favorable to the defendant constitutes a denial of due process and may deny the defendant a fair trial. (See *Giglio* v. *United States* (1972) 405 U.S. 150, 153-154 [31 L.Ed.2d 104, 108-109, 92 S.Ct. 763]; *People* v. *Hitch, supra,* 12 Cal.3d at p. 645.) Hence, defendant has satisfied the first requirement. However, defendant failed to show that he could not have raised the issue earlier; indeed the contrary is plainly true. Defendant could have asserted his *Hitch* motion pretrial; he could have objected to the testimony of the prosecution witness concerning the presence of semen, and to the introduction into evidence of the rape kit; and he could have moved to strike that evidence. He availed himself of none of these opportunities; accordingly, he failed to satisfy the second part of the test. Therefore, the denial of defendant's motion was proper.

Moreover, even if we were to conclude that the *Hitch* issue was properly raised by defendant's new trial motion, we would affirm the trial court's ruling. In so doing we note that this case aptly illustrates why a new trial motion is particularly ill-suited as a device to raise a *Hitch* motion for the first time.

The trial court here in effect was asked to do two things by defendant's motion for a new trial. First, to determine whether there was a *Hitch* violation, and, second, if so, to decide whether a new trial should be granted.

---

[8]*People* v. *Bess* (1984) 153 Cal.App.3d 1053, 1058-1059 [200 Cal.Rptr. 773], presents the interesting question of a motion for new trial under *Fosselman, supra,* due to ineffective counsel when the lawyer failed to make a *Hitch* motion. The appellate court held that a *Hitch* motion would not have been helpful to the defense and concluded, therefore, that there was no ineffective assistance of counsel. Accordingly, the denial of a new trial was proper.

Defendant here does not assert that the failure to bring a *Hitch* motion constituted ineffective assistance of counsel at trial. We assume no such argument was made on appeal because the record discloses that defense counsel was clearly aware of the *Hitch* issue and chose to exploit the failure to refrigerate the sample before the jury rather than by raising it only before the trial judge on a *Hitch* motion. (See *People* v. *Frierson* (1979) 25 Cal.3d 142, 158 [158 Cal.Rptr. 281, 599 P.2d 587] [reasonable tactical decision not constituting ineffective assistance of counsel].)

The functions of the trial court differ significantly in making these determinations; further, the standards for appellate review are also different. Accordingly, by combining the two in one motion, it is extremely difficult for a reviewing court to ascertain exactly what the trial court did in ruling on the motion and to apply the correct standard of review.

For example, focusing on the *Hitch* aspect of this combined motion, the trial court here may have concluded that insofar as medical typing was concerned no evidence was actually destroyed by the police because the opportunity for typing was lost as a result of the delay in the hospital examination. Or, the court may have concluded that, since there was no evidence that a defense expert or anyone else actually tried, unsuccessfully, to type the semen, defendant failed to prove that evidence had, in fact, been destroyed at all. Or, the court may have found there was insufficient evidence because the only person who testified on the consequences of leaving the sample unrefrigerated for one month was a witness who questioned his own expertise to give an opinion.

All of the foregoing involve factual determinations which will not be disturbed on appeal if they are supported by substantial evidence. (*People v. Goss, supra,* 109 Cal.App.3d at p. 454.) Here, there was substantial evidence to support such findings if that is what the trial court intended by its ruling.

On the other hand, the trial court, in denying the new trial motion, may have been focusing on the new trial aspects of defendant's motion. By analogy to the standard by which a trial court considers a motion for new trial for newly discovered evidence or for juror misconduct in receiving information from sources outside the trial (Pen. Code, § 1181, subds. 2, 8), the court may have formulated the issue as follows: Was there a reasonable probability of a different result if a new trial were to be held with a sanction for the *Hitch* error. (See *People v. Beyea* (1974) 38 Cal.App.3d 176, 202 [113 Cal.Rptr. 254]; *People v. Black* (1963) 216 Cal.App.2d 103, 116-117 [30 Cal.Rptr. 798].) By considering the motion in this context, the court first would have focused on the sanction it would have imposed in granting the *Hitch* motion and then would have considered the evidence adduced at the trial in light of that sanction. The sanction most likely to be approved for failure to preserve a semen sample is suppression of the sample. (*People v. Jackson, supra,* 102 Cal.App.3d at pp. 623-624; see also *People v. Hitch, supra,* 12 Cal.3d at p. 653.) Accordingly, the trial court, in denying defendant's motion here, may have concluded that it was not reasonably probable that by suppressing the semen sample at a new trial a different result would occur. ■ The granting or denial of a new trial on newly discovered evidence or for juror misconduct in receiving information from

sources outside the trial, and the fashioning of a sanction for a *Hitch* violation all rest in the sound discretion of the trial court. (*People* v. *Beyea, supra,* 38 Cal.App.3d at p. 202 [newly discovered evidence]; *People* v. *Black, supra,* 216 Cal.App.2d at pp. 116-117 [juror misconduct]; *People* v. *Zamora, supra,* 28 Cal.3d at p. 99 [*Hitch* sanction].)

 We cannot say the trial court abused its discretion if the basis for the denial of the motion for a new trial was that the sanction it would have imposed was suppression of the semen sample and that even with that evidence suppressed there was no reasonable probability the new trial would have produced a different result. Accordingly, on the merits of defendant's motion, the trial court's ruling must be affirmed.[9]

II

THE PROSECUTOR COMMITTED NO PREJUDICIAL MISCONDUCT*

. . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Feinerman, P. J., and Hastings, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 26, 1985.

---

[9]In *California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528], the United States Supreme Court adopted a formulation of the duty-to-preserve test that places a greater burden on a defendant seeking sanctions for destruction of evidence than that established by *Hitch.* Since we conclude here that even under pre-*Trombetta* authority, defendant failed to demonstrate a violation of his rights, it is unnecessary to decide whether *Trombetta's* more rigorous test has supplanted *Hitch* as the appropriate California standard. (See *In re Michael L., supra,* 39 Cal.3d at p. 86; *People* v. *Tierce* (1985) 165 Cal.App.3d 256, 263-265 [211 Cal.Rptr. 325].)

*See footnote, *ante,* page 929.